United States District Court
Southern District of Texas
**ENTERED**
December 19, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DIAMOND BEACH OWNERS ASSOCIATION | § § § § § § § § § § § § § | |
| Plaintiff. | | |
| VS. | | CIVIL ACTION NO. 3:18–CV–00173 |
| STUART DEAN CO., INC.; FLORIDA GLASS OF TAMPA BAY, INC.; and KAWNEER CO., INC. | | |
| Defendants. | | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendant Kawneer Company, Inc.'s Motion to Dismiss Pursuant to FRCP 12(b)(6), and Brief in Support Thereof ("Kawneer's Motion to Dismiss"). Dkt. 17. Kawneer's Motion to Dismiss was referred to this Court by United States District Court Judge George C. Hanks, Jr. for report and recommendation. Dkt. 26. For the reasons stated below, the Court **RECOMMENDS** that Kawneer's Motion to Dismiss be **GRANTED**.

### FACTUAL BACKGROUND

Plaintiff Diamond Beach Owners Association ("Plaintiff") is the homeowner's association for the Diamond Beach Condominiums ("Diamond Beach"), an eight-story building consisting of more than 100 individual units located in Galveston, Texas. Kawneer Company, Inc. ("Kawneer") is a Pennsylvania company that manufactured the windows that were installed at Diamond Beach back in 2009.

In a nutshell, Plaintiff alleges that a myriad of problems arose from the installation of the windows in the condominium units and the indoor pool and restaurant areas at Diamond Beach. Plaintiff has sued Kawneer (the manufacturer of the windows and componentry), Stuart Dean Co., Inc. ("Stuart Dean") (a subcontractor hired by Kawneer in 2012 to help remediate the window frames), and Florida Glass of Tampa Bay (the company that installed the windows in 2009) for damages arising out of the alleged improper installation and remediation of the windows.

Plaintiff has asserted causes of action against Kawneer for breach of express warranty for goods, common law negligence, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). Kawneer has filed a Motion to Dismiss, seeking to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1]

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

---

[1] Stuart Dean has also filed a Rule 12(b)(6) Motion to Dismiss. This Memorandum & Recommendation, however, focuses exclusively on Kawneer's Motion to Dismiss.

*Iqbal*, 556 U.S. at 679 (citation omitted). When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks omitted). A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Harrington v. State Farm & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotation marks and citation omitted).

## ANALYSIS

A. **The Statute of Limitations Precludes Plaintiff's Express Warranty and Negligence Claims (and Certain DTPA Claims)**

In its Motion to Dismiss, Kawneer argues that most of Plaintiff's claims for affirmative relief are time-barred by the statute of limitations because Plaintiff readily admits that it possessed actual knowledge of the facts giving rise to those claims roughly six years before this lawsuit was filed.[2] The Court wholeheartedly agrees with Kawneer.

In Texas, the statute of limitations is four years for a breach of express warranty claim and two years for negligence and DPTA claims. *See* TEX. BUS. & COM. CODE § 2.725(a) (breach of express warranty); TEX. CIV. PRAC. & REM. CODE § 16.003(a) (negligence); TEX. BUS. & COM. CODE § 17.565 (DTPA). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred . . . ." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citation omitted).

---

[2] This case was originally filed on May 5, 2018, in the 56th Judicial District Court of Galveston County, Texas and then timely removed to this Court.

3

In this case, Plaintiff complains that the windows and related componentry installed at Diamond Beach in 2009 did not meet the high-quality representations made by Kawneer. A cause of action accrues and "begin[s] to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) (collecting cases). "In some types of cases, the discovery rule may defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Barker v. Eckman*, 213 S.W.3d 306, 311–12 (Tex. 2006) (citation omitted).

As a preliminary argument, Kawneer contends that the discovery rule does not even apply to Plaintiff's express warranty claim. Under Texas law, a cause of action for breach of an express warranty accrues "when tender of delivery is made, except [] where a warranty explicitly extends to future performance of the goods . . . ." TEX. BUS. & COM. CODE § 2.725. *See also Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 549 (Tex. 1986) ("The language of [Section 2.725] clearly precludes the application of the discovery rule except in situations where there is an explicit reference to future performance."). "Although section 2.725(b) does include a 'future performance exception' that can extend the limitations period, an express warranty must explicitly extend to future performance to meet the exception." *Mendes v. Toyota Motor Sales, U.S.A., Inc.*, No. H-15-3018, 2016 WL 1222153, at *2 (S.D. Tex. Mar. 29, 2016) (citing *Certainteed Corp.*, 710 S.W.2d at 546). Courts "construe the exception narrowly, with the emphasis on the term 'explicitly.'" *Certainteed Corp.*, 710 S.W.2d at 548 (citation

4

omitted). "For an express warranty to meet the exception, it must make specific reference to a specific date in the future." *Id.* (citation omitted). Here, Plaintiff has failed to identify with specificity any terms of the purported express warranty. Even reviewing the First Amended Complaint's allegations in the light most favorable to Plaintiff at this stage of the litigation, there are simply no allegations that identify a warranty that "make[s] specific reference to a specific date in the future." *Id.* (citation omitted). Therefore, the discovery rule has absolutely no application to the express warranty claim. Plaintiff's breach of warranty claim accrued back in 2009 when Kawneer tendered the windows for delivery. Because the four-year statute of limitations on the express warranty claim expired in 2013, Kawneer's express warranty cause of action is barred by the statute of limitations.

Even if this Court gives Plaintiff the benefit of the doubt and assumes that the discovery rule did apply to the situation at hand, it does not provide the cure-all Plaintiff seeks. Plaintiff argues that the limitations period for the express warranty, negligence, and DTPA claims did not begin to run under the discovery rule until it "realize[d] the full extent of the nature of [its] injury." Dkt. 20 at 8. Plaintiff asserts that it first knew the "full extent" of its injury on August 17, 2017, the date Kawneer's lawyer sent a letter to Diamond Beach's lawyer, detailing the underlying causes of the window failure. Since this lawsuit was filed just a few months after Plaintiff discovered the "full extent" of its injury, Plaintiff claims limitations poses no obstacle to this lawsuit proceeding. Plaintiff is sorely mistaken.

5

According to the First Amended Complaint, Plaintiff first "notified Kawneer of the window coating failure to the windows and/or related componentry on [sic] around 2011." Dkt. 16 at 17. Then, "[o]n or about March 2012, Kawneer contracted Stuart Dean to remediate approximately 119 window frames at Diamond Beach that showed signs of coating failure and corrosion." *Id.* at 3. Based on these admissions, there is no question that Plaintiff knew, at the absolute latest, by March 2012, of the facts underlying the alleged defective windows and related componentry.

The law is clear: the statute of limitations begins to run when party knew, or should have known, of the facts giving rise to a cause of action. *See HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). Once a plaintiff learns of an injury, the statute of limitations begins to run even if the plaintiff does not yet know "the specific cause of the injury . . . [or] the full extent of it.'" *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004) (collecting cases). The Texas Supreme Court's opinion in *PPG Indus.* is instructive. In that case, the purchaser of an office building brought a lawsuit against a window manufacturer, alleging a breach of warranty and violations of the DTPA. *See id.* The Texas Supreme Court held that the plaintiff's cause of action accrued upon the original discovery of the deterioration of reflective coating on windows, and not from the later point when the "full extent" of the injury came to be understood. *Id.* The same logic applies with equal force to this case. For limitation purposes, Plaintiff knew there were problems with the windows in 2011/2012 and that knowledge put Plaintiff on notice of actual or potential injury-causing conduct, even if it did not realize the full extent of its injury. Plaintiff therefore had an obligation

6

to "exercise reasonable diligence to investigate the suspected harm and file suit, if at all, within the limitations period." *Exxon Corp.*, 348 S.W.3d at 207. Because Plaintiff did not file suit until approximately six years after becoming aware of the injury, the Court holds that Plaintiff's breach of express warranty and negligence causes of action are barred by the applicable statute of limitations. Similarly, the statute of limitations bars those DTPA claims which are based on an express warranty—except those that arise out of alleged promises made in 2016 and 2017—since Plaintiff knew of the false, misleading or deceptive acts back in the 2011/2012 time period.

**B.     The Economic Loss Rule Bars Plaintiff's Negligence Claim**

As noted above, the Court finds that Kawneer's negligence claim is barred by the statute of limitations. But even if the statute of limitations did not stop Plaintiff's negligence claim dead in its tracks, application of the economic loss doctrine would preclude Plaintiff from pursuing a negligence claim as a matter of law.

The economic loss "doctrine has been expressed and applied by Texas courts in two related, overlapping contexts." *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 90 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citation omitted). "First, the doctrine has been applied to preclude tort claims brought to recover economic losses when those losses are the subject matter of a contract." *Id.* (citation omitted). Second, the economic loss rule bars tort claims such as negligence against the manufacturer or seller of an allegedly defective product where the only alleged damage is harm to the product itself and not damage to "other property" or "personal injury." *Id.* at 91.

7

Kawneer contends that the economic loss rule bars Plaintiff's negligence claims under both so-called prongs. First, Kawneer argues, Plaintiff's negligence claim is nothing more than a repackaged contract claim, seeking to recover tort damages when there is a contract between the parties expressly governing the transaction at issue. Second, Kawneer claims that the economic loss doctrine bars Plaintiff's negligence claim because Plaintiff's purported injury arises from alleged defective goods, and the alleged damages are limited to the goods themselves. In support of its position, Kawneer observes that Plaintiff specifically describes the damages it has sustained as a result of Kawneer's negligence as "continuing, excessive corrosion to Diamond Beach decomposing, inadequately painted and/or remediated window frame componentry." Dkt. 16 at 19. Because the economic loss doctrine "preclude[s] tort claims for economic losses made directly against a manufacturer or supplier of a defective component part that causes damage to the 'finished product' into which the component is incorporated," Kawneer maintains that Plaintiff's negligence claim is doomed as a matter of law. *Pugh*, 243 S.W.3d at 92 (citation omitted).

In response, Plaintiff focuses entirely on the first context in which the economic loss doctrine arises, asserting that the economic loss doctrine "does not bar all tort claims arising out of a contractual setting." Dkt. 20 at 9. That statement is true, but Plaintiff cannot explain how the negligence allegations *in this lawsuit* escape the grasp of the economic loss doctrine. As Kawneer accurately notes: "Kawneer's alleged duty to provide non-defective windows was born out of a contractual undertaking and that the only damages Plaintiff alleges are the economic loss of the contractual benefit (i.e., the

8

windows and related componentry at issue here)." Dkt. 23 at 5. In short, this case presents a textbook example of when the economic loss rule would preclude a negligence claim because the alleged losses fall squarely within the purview of an underlying contract. Moreover, Plaintiff completely ignores the second context in which the economic loss rule applies—"when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself." *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) (citation omitted). In this case, there is no dispute that the only damages sought relate to the allegedly defective windows and the condominium units in which they were installed. As such, the economic loss doctrine undoubtedly precludes Plaintiff's negligence claim. *See Klein v. Marvin Lumber and Cedar Co.*, 575 F. App'x 347, 349 (5th Cir. 2014) (negligence claim relating to the design and manufacture of windows installed in a personal residence precluded by the economic loss doctrine); *Bay Breeze Condo. Assoc. v. Norco Windows, Inc.*, 651 N.W.2d 738, 746 (Wis. Ct. App. 2002) (homeowner association's negligence claim against a window manufacturer for damages to the interior and exterior of condominium units caused by failed windows barred by the economic loss doctrine).

C. **Plaintiff has Failed to State a DTPA Claim Under Rule 12(b)(6)**

The DTPA allows consumers to sue when any "false, misleading, or deceptive act or practice" mentioned in the statute is relied upon by the consumer and is a producing cause of the consumer's damages. TEX. BUS. & COM. CODE § 17.50(a)(1). The statute contains a list of "false, misleading, or deceptive act[s] or practice[s]," including the following categories of acts alleged by Plaintiff here:

9

- causing "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." § 17.46(b)(2);

- representing a good has characteristics or benefits it does not have. § 17.46(b)(5);

- representing a good is of a particular quality when it is not. § 17.46(b)(7);

- advertising a good "with intent not to sell [it] as advertised." § 17.46(b)(9);

- "representing that an agreement confers or involves rights, remedies, or obligations which it does not have." § 17.46(b)(12);

- "representing that a guaranty or warranty confers or involves rights or remedies which it does not have." § 17.46(b)(20); and

- failing to disclose known information about a good with intent to induce a consumer into a transaction they otherwise would not have entered into. § 17.46(b)(24).

In addition to these so-called "laundry list" violations set forth in the DTPA, Plaintiff alleges Kawneer violated the statute by breaching an express warranty and/or engaging in unconscionable action. *See* § 17.50(a)(2) (a consumer may maintain an action under the DTPA for breach of an express or implied warranty); § 17.50(a)(3) (a consumer may maintain an action under the DTPA for "any unconscionable action or course of action").

To properly evaluate the sufficiency of the First Amended Complaint's DTPA allegations, the Court will discuss, one-by-one, each DTPA provision Plaintiff alleges Kawneer violated.

**Section 17.46(b)(2):** Section 17.46(b)(2) makes it a violation of the DTPA to cause "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." Focusing on conduct that allegedly took place in

10

2016, Plaintiff alleges Kawneer violated this section by its "(1) unreasonable delays the investigation and resolution of Plaintiff's warranty claim . . . (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's property when liability has become reasonably clear." Dkt. 16 at 19. Even if this Court, as it must, accepts these allegations as true and views them in the light most favorable to Plaintiff, there is no actionable DTPA violation under Section 17.46(b)(2). Notably, Plaintiff has failed to allege any facts that remotely suggest that there was "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," a prerequisite to liability under this section.

**Sections 17.46(b)(5), (7), and (9):** As explained above, any DTPA claim based on conduct that occurred prior to May 5, 2016 (two years before this lawsuit was filed) is barred by the DTPA's two-year statute of limitations. This would include Plaintiff's Sections 17.46(b)(5), (7), and (9) claims, which allege that Kawneer misrepresented the window products it manufactured as "high performance" and advertised windows and related componentry with the intent not to sell them as advertised. The facts underlying these alleged misrepresentations were known to Plaintiff in 2011/2012, meaning that the two-year limitations for DTPA claims began at that time and expired, at the latest, sometime in 2014. The statute of limitations, therefore, precludes Plaintiff's claims under Sections 17.46(b)(5), (7), and (9).

**Sections 17.46(b)(12), (20) and 17.50(a)(2):** Sections 17.46(b)(12), (20) and 17.50(a)(2) are all predicated on the existence of an agreement or warranty. Indeed, these statutory provisions specifically provide that it is a DTPA violation to represent an

11

agreement confers or involves rights it does not have, to represent a warranty confers or involves rights it does not have, or to breach an express warranty. In pursuing claims under Sections 17.46(b)(12), (20) and 17.50(a)(2), Plaintiff contends that certain statements made to Plaintiff in October 2016 and July 2017 constitute an additional warranty separate and apart from the alleged warranty arising from the sale of the window products in 2009. Specifically, Plaintiff contends that Chris Jones, a Kawneer representative, told Plaintiff in 2016 that Kawneer would fix any outstanding window problems, and a 2017 Kawneer report indicated that window repair efforts would have no negative impact on the window frame drainage systems. Plaintiff claims that Kawneer did not live up to these promises, and as a result, there is a cognizable DTPA warranty action. Plaintiff is wrong.

The DTPA does not create warranties; instead, a plaintiff must establish the existence of a warranty created by the common law or a statute. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984). Under Texas law, express warranties arise only when a seller makes a promise that forms a "basis of the bargain." TEX. BUS. & COM. CODE § 2.313(a)(1). Kawneer notes that post-sale promises, such as those alleged here by Plaintiff, cannot be considered warranties, since they plainly did not form a "basis of the bargain." *See Certainteed Corp.*, 710 S.W.2d at 548 ("A representation as to the description of the goods which becomes a basis of the bargain that the goods shall conform to the description is an express warranty."); *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 233 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("[a]n express warranty is created when a seller makes an affirmation of fact

12

or a promise to the purchaser, which relates to the sale and warrants a conformity to the affirmation as promised") (internal quotation marks and citation omitted). This argument is persuasive and Plaintiff does not even bother to respond to it. As a result, Plaintiff has not properly alleged a claim under Sections 17.46(b)(12), (20) and 17.50(a)(2).

**Section 17.46(b)(24):** Plaintiff includes in the First Amended Complaint just one passing reference to Section 17.46(b)(24), with no discussion of what conduct is challenged and no explanation as to how Kawneer allegedly violated this provision. Because Plaintiff has failed to set out something "more than labels and conclusions," the Section 17.46(b)(24) claim fails to pass muster under Rule 12(b)(6) and should be dismissed. *Twombly*, 550 U.S. at 545.

**Section 17.50(a)(3):** Last but not least, Plaintiff alleges Kawneer violated the DTPA by acting unconscionably in the following ways: (1) "by not timely responding to Plaintiff's warranty claim"; (2) by not "addressing the incorrectly-installed windows" after being put on notice; (3) by not "addressing the deficient repair work completed by Stuart Dean"; and (4) by stating in a June 2017 report "that there were no negative effects to the window frame drainage systems" repairs performed by Stuart Dean. Dkt. 16 at 21.[3]

Section 17.50(a)(3) entitles a consumer to bring a claim against a person who commits an "unconscionable action or course of action" that causes economic damages or

---

[3] To the extent Plaintiff seeks to recover on the basis of any alleged unconscionable conduct that took place prior to May 5, 2016, the DTPA's two-year statute of limitations shuts down that effort.

damages for mental anguish. An "unconscionable action or course of action" is "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* at § 17.45(5). To properly plead an unconscionable action or course of action, Plaintiff must allege that Kawneer took advantage of Plaintiff's lack of knowledge and "that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985). Simply repeating the term "unconscionable" multiple times in the First Amended Complaint is not sufficient, without more, to invoke the DTPA's consumer protections.

Plaintiff's assertion that Kawneer did not timely respond to Plaintiff's warranty claim is belied by its own allegations contained in the First Amended Complaint. In its live pleading, Plaintiff acknowledges that it notified Kawneer of the window coating failure in 2011. *See* Dkt. 16 at 17. Far from sitting on the sidelines and doing nothing, Kawneer actually began remediation efforts soon thereafter, contracting with a third-party in March 2012 to assist with the necessary repairs. *See id.* at 3. Several years later, in 2016, Plaintiff once again raised concerns of window problems and Kawneer representatives met several times with Plaintiff to seek a resolution to the problems. *See id.* at 4–5.

As far as Plaintiff's contention that Kawneer did not attend to the incorrectly-installed windows or the allegedly deficient repair efforts by Stuart Dean, Plaintiff has failed to plead any facts to establish that Plaintiff had any duty to address any negligently installed windows or the allegedly deficient repair efforts undertaken by Stuart Dean.

Although Plaintiff claimed in its response that an agency relationship existed between Kawneer and Stuart Dean, the First Amended Complaint contains no such allegations. This is critical because "[i]n considering a 12(b)(6) motion, the court should only consider the factual allegations contained in the original complaint. New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings." *Coach, Inc. v. Angela's Boutique*, No. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011) (collecting authorities). Moreover, even if properly pled, it is unclear how the existence of an agency relationship between Kawneer and Stuart Dean would have any impact on the DTPA unconscionability issue.

In sum, Plaintiff's unconscionability allegations are merely conclusory statements that utterly fail to meet the Rule 12(b)(6) pleading standard enunciated by the Supreme Court. *See Iqbal*, 556 U.S. at 677–78; *Twombly*, 550 U.S. at 570. As the Fifth Circuit has recognized, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal under Rule 12(b)(6)." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002) (citation omitted). Accordingly, Plaintiff's DTPA unconscionability claim should be dismissed.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Kawneer's Motion to Dismiss be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.

Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 19th day of December, 2018.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE