United States District Court
Southern District of Texas
**ENTERED**
December 21, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DIAMOND BEACH OWNERS ASSOCIATION | § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:18–CV–00173 |
| STUART DEAN CO., INC.; FLORIDA GLASS OF TAMPA BAY, INC.; and KAWNEER CO., INC. | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

There are currently two pending motions: (1) Stuart Dean Co., Inc.'s Rule 12(b)(6) Motion to Dismiss ("Stuart Dean's Motion to Dismiss") (Dkt. 18); and (2) Stuart Dean Co., Inc.'s Motion to Strike Plaintiff's Response and Evidence Filed Therewith and Reply to Plaintiff's Response to Stuart Dean's Rule 12(b)(6) Motion to Dismiss ("Motion to Strike") (Dkt. 22). These motions have been referred to this Court by United States District Court Judge George C. Hanks, Jr. Dkt. 26.

## FACTUAL ALLEGATIONS[1]

Plaintiff Diamond Beach Owners Association ("Plaintiff") is the homeowner's association for the Diamond Beach Condominiums ("Diamond Beach"), an eight-story

---

[1] The factual allegations set forth in this section come directly from the First Amended Complaint. In considering Stuart Dean's Motion to Dismiss, these factual allegations are taken as true and viewed in the light most favorable to Plaintiff. *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015).

building consisting of more than 100 individual units located in Galveston, Texas.  Plaintiff has filed this lawsuit seeking damages arising from the alleged faulty manufacture, installation, and remediation of windows and related componentry in condominium units and the pool/restaurant area at Diamond Beach.

Kawneer Company, Inc. ("Kawneer") manufactured the windows for installation at Diamond Beach.  Florida Glass of Tampa Bay, Inc. ("Florida Glass") was the company that installed the windows at Diamond Beach during 2009.  Although Florida Glass represented that it had the experience necessary to install the windows, Florida Glass installed the windows backwards.

Beginning in 2011, there were multiple reports of window coating failure and corrosion.  Plaintiff notified Kawneer of the problems with the windows and Kawneer began looking for ways to resolve the problem.  Kawneer eventually hired Stuart Dean Co., Inc. ("Stuart Dean"), a New York company, as a subcontractor to help remediate the window frames at Diamond Beach that showed signs of coating failure and corrosion.  According to Plaintiff, Stuart Dean did a poor job.  "The remedial services performed by Stuart Dean/Kawneer included prepping and coating with the windows in place; covering over the problem.  Stuart Dean also painted over window frame drain holes, preventing condensation and precipitation from draining properly."  Dkt. 16 at 3–4.

Plaintiff has sued Stuart Dean, Kawneer, and Florida Glass for damages arising from the alleged improper manufacture, installation, and remediation of the windows at Diamond Beach.  With respect to Stuart Dean, Plaintiff asserts four causes of action in the First Amended Complaint: (1) breach of express warranty; (2) breach of an implied

2

warranty of good and workmanlike services; (3) violations of the Texas Deceptive Trade Practices Act ("DTPA"); and (4) negligence.

Stuart Dean has filed a Motion to Dismiss, seeking to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons stated below, the Court **RECOMMENDS** that Stuart Dean's Motion to Dismiss be **GRANTED**.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) recognizes that the failure to state a claim upon which relief can be granted is a ground for the dismissal of a complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The plausibility standard requires more of plaintiffs than simply alleging facts that indicate relief is possible.  As the Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).  Where "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id.* at 679 (internal quotation marks, brackets, and citation omitted).  Thus, "[t]hreadbare

3

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

As already noted, a court considering a Rule 12(b)(6) motion must accept all well-pleaded facts as true and view those facts in the light most favorable to plaintiff. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015). At the same time, overcoming a 12(b)(6) motion requires that a plaintiff invoke something more than mere conclusions. "[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (internal quotation marks and citation omitted). It has long been the rule in the Fifth Circuit that motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks and citation omitted).

## MOTION TO STRIKE

Before delving into the merits of Stuart Dean's Motion to Dismiss, the Court will first address Stuart Dean's objections to several documents attached to Plaintiff's Response to Stuart Dean Co., Inc.'s Rule 12(b)(6) Motion to Dismiss ("Plaintiff's Response"). Dkt. 21. Stated simply, Stuart Dean argues that the various exhibits attached to Plaintiff's Response should be stricken because they are neither attached to nor incorporated into the First Amended Complaint.[2]

---

[2] Stuart Dean also requests that the Court strike Plaintiff's Response in its entirety because it relies on allegations that are not to be found anywhere in the First Amended Complaint. The Court fully agrees that the sufficiency of a complaint rises or falls with the allegations contained in the lawsuit. A party may not rely on new facts asserted for the first time in a response to a motion to dismiss to defeat the underlying motion. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to

When considering a motion to dismiss, a court's review is limited to the live complaint, any documents attached to the live complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the live complaint. *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (consideration of documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim"); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) ("[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint.").

Plaintiff attaches six documents to its submission opposing Stuart Dean's Motion to Dismiss. These documents include various proposals, purchase orders, letters, and a PowerPoint presentation. Importantly, none of the documents are attached to the First Amended Complaint or referenced in the First Amended Complaint. Because a court deciding a Rule 12(b)(6) motion to dismiss "may not go outside the pleadings," the documents attached to Plaintiff's Response are stricken and will not be considered. *Colle v. Brazos Cty.*, 981 F.2d 237, 243 (5th Cir. 1993).

## ANALYSIS

### A. Breach of Express Warranty

To properly plead an express warranty claim under Texas law, a plaintiff must plead six elements:

---

a motion to dismiss.") (collecting cases). Although the undersigned is unwilling to strike Plaintiff's Response completely, the Court will refrain from considering new allegations presented for the first time in Plaintiff's Response when determining the adequacy of the First Amended Complaint.

(1) the defendant sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury.

*Wildman v. Medtronic, Inc.*, 874 F.3d 862, 868 n.3 (5th Cir. 2017) (quoting *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 886 (Tex. App.—Dallas 2007, no pet.)).

   **"The defendant made a representation to the plaintiff about the characteristics of the services":** According to the First Amended Complaint, Plaintiff's express warranty claim is based on an allegation that Stuart Dean made representations to Kawneer (which were then somehow passed onto Plaintiff) or indirectly to Plaintiff through general advertisements displayed on its website.  Specifically, Plaintiff alleges that Stuart Dean advertised on its website that the company would provide "high performance" services that set "a new standard for the industry."  Dkt. 16 at 7.  Plaintiff also contends that Stuart Dean told Kawneer that it "would perform quality repair work on Diamond Beach."  *Id*.  These alleged representations form the basis of Plaintiff's express warranty claim.

   To begin, Stuart Dean argues that Plaintiff cannot rely on these alleged marketing representations for its express warranty claim because they are non-actionable puffery. Stated another way, Stuart Dean contends that Plaintiff has failed to sufficiently allege the second essential element of a viable express warranty claim—"the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description."  *Wildman*, 874 F.3d at 868 n.3 (citation omitted).  The Court concurs.

A seller creates an express warranty when he "makes an affirmation of fact or a promise to the purchaser, which relates to the sale and warrants a conformity to the affirmation as promised." *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 233 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citation omitted).  A statement that is mere puffery does not give rise to an actionable warranty. *See id*. at 230; *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 361 (Tex. App.—Corpus Christi 1994, no writ). "Puffery," as opposed to a statement of fact, "is an expression of opinion by a seller not made as a representation of fact." *Dowling v. NADW Mktg. Inc.,* 631 S.W.2d 726, 729 (Tex. 1982) (citation omitted).

Here, the statements that Stuart Dean allegedly made with respect to providing "high performance" services and "quality work" are not expressions of fact that create an express warranty.  A reasonable person who heard these statements would be hard-pressed to know what, if anything, is actually being warranted.  Such vague and imprecise statements are classic examples of puffery that do not give rise to an express warranty.  *See, e.g., MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex. 1998) (statements made in marketing materials that defendant would provide "qualified personnel and resources" and "the best health services possible" were not specific enough it constitute a warranty for DTPA purposes); *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 159 (Tex. 1995) (statements that the building was "superb," "super fine," and "one of the finest little properties in the City of Austin" to be mere puffing or opinion and not actionable); *Kramer v. Hollmann*, No. 02-11-00136-CV, 2012 WL 5869423, at *5 (Tex. App.—Fort Worth Nov. 21, 2012, pet. denied) (statements that the house was "a magnificent home with a quality level rarely seen in Tarrant County" and "one of the finest

homes in the City" to be mere expressions of opinion or puffery and not actionable). Although Plaintiff casually asserts that the challenged statements made by Stuart Dean go "beyond 'puffery,'" Plaintiff fails to provide any explanation or analysis as to why the challenged statements should be considered anything other than pure expressions of opinion which do not give rise to an express warranty.  Dkt. 21 at 10.

Even if the Court were to consider the statements at issue as expressions of fact sufficient to create an express warranty, Plaintiff's express warranty claim would still fail because Plaintiff does not allege that "the defendant sold services to the plaintiff" or "the representation became part of the basis of the bargain." *Wildman*, 874 F.3d at 868 n.3 (citation omitted).  These are two essential elements to a breach of warranty cause of action and are examined below with respect to the allegations set forth in the First Amended Complaint.

**"The defendant sold services to the plaintiff":** Stuart Dean is not alleged to have sold any services to Plaintiff.  Indeed, Plaintiff's live pleading recognizes that Kawneer, not Plaintiff, hired Stuart Dean to remediate the windows.  Kawneer had the direct contractual arrangement with Plaintiff, and there is not the slightest contention anywhere in the First Amended Complaint that Plaintiff and Stuart Dean ever entered into an agreement or participated in direct discussions regarding the windows.  In an effort to overcome this pleading defect, Plaintiff asserts in its response that "a 'beneficiary' of a contract has standing to sue a subcontractor to an original contract under a breach of contract theory given specific language" and that it "can demonstrate that in fact a subcontractor can be considered in privity of contract with a property owner when there is specific language in the contract." Dkt. 21 at 6, 8.  Notably, these allegations are nowhere

to be found in the First Amended Complaint.   This is critical because it is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time. *See Coach, Inc. v. Angela's Boutique*, No. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011) ("In considering a 12(b)(6) motion, the court should only consider the factual allegations contained in the original complaint.   New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings.") (collecting authorities).

**"The representation became part of the basis of the bargain":**   Under Texas law, express warranties arise only when a seller makes a promise that forms a "basis of the bargain." *Humble Nat'l Bank,* 933 S.W.2d at 233.   The First Amended Complaint contains no allegations that Plaintiff and Stuart Dean entered into any sort of agreement that could form the "basis of the bargain."   All Plaintiff claims is that it entered into a contractual agreement with Kawneer in 2009 for windows and related componentry, Kawneer contracted with Stuart Dean in 2011 for assistance in remediating window frames, and Plaintiff relied on promises made by Stuart Dean concerning the quality of its services. This is insufficient as matter of law.   "While [Plaintiff] may indeed have relied on those promises [made by Stuart Dean], [Plaintiff] was buying [Kawneer's] services; it was not buying [Stuart Dean's] goods.   Accordingly, [Stuart Dean's] promises cannot be the basis of the bargain made between [Plaintiff] and [Kawneer]." *Lyda Constructors, Inc. v. Butler Mfg. Co.*, 103 S.W.3d 632, 638 (Tex. App.—San Antonio 2003, no pet.) (dismissing breach of express warranty claim against a subcontractor).

**B.      Implied Warranty of Good and Workmanlike Services**

Plaintiff next asserts that Stuart Dean has breached an implied warranty of good and workmanlike services.  This claim fails because, as Stuart Dean is quick to point out, Texas law does not recognize such a cause of action between an owner and a subcontractor absent a direct contractual relationship.

"[A] property owner may not recover under an implied warranty theory from a subcontractor with whom the owner has no direct contractual relationship."  *Raymond v. Rahme*, 78 S.W.3d 552, 563 (Tex. App.—Austin 2002, no pet.) (citing *Codner v. Arellano*, 40 S.W.3d 666, 672–74 (Tex. App.—Austin 2001, no pet.)).  *See also J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (a property owner "does not have a cause of action for common law breach of implied warranty against" a subcontractor unless there is a contract in place between the property owner and subcontractor); *Harris Packaging Corp. v. Baker Concrete Constr. Co.*, 982 S.W.2d 62, 67 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that a claim for breach of implied warranty of fitness for a particular purpose failed because of a lack of privity).  "[B]ecause a property owner has recourse against the general contractor with whom he contracted, there is no compelling public policy reason to impose an implied warranty against a subcontractor."  *Raymond*, 78 S.W.3d at 563 (citing *Codner*, 40 S.W.3d at 674).

**C.      DTPA**

The Texas Legislature enacted the DTPA to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."

TEX. BUS. & COM. CODE § 17.44.  The First Amended Complaint alleges three separate types of DTPA claims against Stuart Dean: (1) violations from the "laundry list" of deceptive acts and practices; (2) the breach of an express and/or implied warranty through advertising on the internet and reassurances made to Kawneer; and (3) unconscionable acts by not remediating the window frame system correctly.  To properly evaluate the sufficiency of Plaintiff's DTPA allegations, the Court will discuss each type of DTPA claim separately.

### 1.  The "Laundry List" Items

The DTPA allows consumers to sue when any "false, misleading, or deceptive act or practice" mentioned in the statute is relied upon by the consumer and is a producing cause of the consumer's damages.  TEX. BUS. & COM. CODE § 17.50(a)(1).  The statute contains a "laundry list" of "false, misleading, or deceptive act[s] or practice[s]," including the following categories of acts alleged by Plaintiff here:

- causing "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services."  § 17.46(b)(2);

- representing a good has characteristics or benefits it does not have.  § 17.46(b)(5);

- representing a good is of a particular quality when it is not.  § 17.46(b)(7);

- advertising a good "with intent not to sell [it] as advertised."  § 17.46(b)(9);

- "representing that an agreement confers or involves rights, remedies, or obligations which it does not have."  § 17.46(b)(12);

- "representing that a guaranty or warranty confers or involves rights or remedies which it does not have."  § 17.46(b)(20); and

- failing to disclose known information about a good with intent to induce a consumer into a transaction they otherwise would not have entered into. § 17.46(b)(24).

Stuart Dean contends that the DTPA laundry list claims must be dismissed for a variety of reasons.  First, Stuart Dean argues that Plaintiff has failed to sufficiently allege facts demonstrating reliance.  To properly assert a laundry list claim, Plaintiff must plead its detrimental reliance on the purportedly false, misleading or deceptive acts.  *See* Tex. Bus. & Com. Code § 17.46(b).  Although the First Amended Complaint cursorily states that "Plaintiff relied upon statements made by Stuart Dean," there are no additional facts pled that shed any light on that statement.  Dkt. 16 at 11.  Plaintiff complains about the truthfulness of statements Stuart Dean made to Kawneer, but notably absent from the First Amended Complaint is any explanation how Plaintiff could conceivably have relied on statements Stuart Dean allegedly made to Kawneer.  Given that Plaintiff and Stuart Dean are not alleged to have entered into any sort of contractual agreement, it is hard to understand how (or why) Plaintiff would have relied on something Stuart Dean told Kawneer.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted).  Because Plaintiff has failed to allege enough facts concerning the reliance element to move its claim "across the line from conceivable to plausible," the DTPA cause of action should be dismissed.  *Id.* at 570.

Next, Stuart Dean argues that the alleged statements giving rise to a laundry list violation amount to no more than sales puffery and are far from the kind of misrepresentations of material fact necessary to plead a claim under the DTPA.  "The

DTPA requires that the consumer show that the misrepresentation was false and that the false misrepresentation was the producing cause of the consumer's damages." *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002) (citation omitted).  As discussed fully above in the express warranty section of this opinion, the statements attributed to Stuart Dean amount to nothing more than non-actionable sales puffery.  Something more than mere opinion or puffery must exist before a person will be held liable under the DTPA.  *See Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462 (Tex. App.—Dallas 1990, writ denied) ("we hold that if the statements alleged to be misrepresentations are, in fact, only puffing or opinion, they cannot be actionable representations under the DTPA").

Lastly, Stuart Dean goes to great lengths in its motion to dismiss briefing to explain how and why Plaintiff has failed to provide enough details in its First Amended Complaint to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).  The Court fully agrees with Stuart Dean that Plaintiff has, at most, provided nothing more than a "formulaic recitation" of elements. *Id.* at 555.  Even if this Court, as it must, accepts Plaintiff's allegations as true and views them in the light most favorable to Plaintiff, there is no cognizable DTPA violation.

By way of example, Section 17.46(b)(2) makes it a violation of the DTPA to cause "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services."   Plaintiff alleges Stuart Dean violated this section by its "(1) unreasonable delays the investigation and resolution of Plaintiff's warranty claim . . . (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's property when liability has become reasonably clear." Dkt. 16 at 10.  Notably,

Plaintiff has failed to allege any facts that remotely suggest that there was "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," a prerequisite to liability under this section.   Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 17.46(b)(2).

Sections 17.46(b)(5), (7), and (9) all require misrepresentations for liability to attach the alleged misrepresentations at play here—such as the claim that Stuart Dean's services "were of a 'high performance,' that set a 'new standard for the industry'"—are simply too vague and general to constitute actionable misrepresentations.  Dkt. 16 at 10.

Section 17.46(b)(12) prohibits "representing that an agreement confers or involves rights . . . which it does not have or involve."  Although Plaintiff asserts that Stuart Dean has violated this section, there is no mention in the First Amended Complaint referencing any agreement Stuart Dean allegedly misrepresented.  Plaintiff cannot just state that Stuart Dean has violated this (or any other) statutory provision without providing "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Plaintiff's DTPA claims under Section 17.46(b)(20), which prohibits misrepresentations related to warranties, and Section 17.46(b)(24), which prohibits someone from failing to disclose information to induce a consumer into a transaction, also miss the mark because Plaintiff does not even bother to set forth any factual allegations remotely describing how Stuart Dean's conduct and actions could have violated these sections.  Labels and conclusions are not enough.  Because the First Amended Complaint fails to allege facts that could plausibly support any of its allegations of laundry list violations, the Court recommends that such claims be dismissed.

### 2.  Breach of Warranty

In addition to the "laundry list" violations, Plaintiff advances a DTPA breach of warranty claim.  Specifically, Plaintiff alleges Stuart Dean "breached an express and/or implied warranty" through "their advertising" and "re-assurances made to Kawneer."  Dkt. 16 at 11.

A warranty cause of action may be brought as a straight up breach of warranty claim or that same warranty claim can be brought under the DTPA's warranty provision.  *See* TEX. BUS. & COM. CODE § 17.50(a)(2) (a consumer may maintain an action under the DTPA for breach of an express or implied warranty).  The DTPA does not create warranties; it merely provides a vehicle to assert a warranty claim.  *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984).  "Warranties actionable under the DTPA, both express and implied, must first be recognized by common law or created by statute."  *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 746 (Tex. App.— Fort Worth 2005, no pet.) (citation omitted).  In this case, Plaintiff's DTPA warranty claim collapses because, as detailed above, Plaintiff does not properly plead a warranty claim recognized by Texas law.  There are several required elements of a warranty claim that Plaintiff fails to sufficiently allege: "the defendant sold services to the plaintiff," "the defendant made a representation to the plaintiff about the characteristics of the services," and "the representation became part of the basis of the bargain."  *Wildman*, 874 F.3d at 868 n.3.  Just like the express warranty claim, Plaintiff's DTPA warranty claim should also not be permitted to proceed.

### 3. Unconscionability

Plaintiff also argues that Stuart Dean committed an unconscionable action in violation of the DTPA by "not remediating the window frame system correctly, but instead simply painting and/or powder coating over the corrosion . . . knowing the band aid would only be a temporary remedy."  Dkt. 16 at 11.  Other than the bare assertion that "Stuart Dean took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree," the First Amended Complaint does not describe the supposed unconscionable conduct.  *Id.*

Section 17.50(a)(3) entitles a consumer to bring a claim against a person who commits an "unconscionable action or course of action" that causes economic damages or damages for mental anguish.  An "unconscionable action or course of action" is "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."  *Id*. at § 17.45(5).  To properly plead an unconscionable action or course of action, Plaintiff must allege that Stuart Dean took advantage of Plaintiff's lack of knowledge and "that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated."  *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985).  Simply repeating the term "unconscionable" multiple times in the First Amended Complaint is insufficient, without more, to invoke the DTPA's consumer protections.  As Stuart Dean points out: "Plaintiff's formulaic recitation of the definition of unconscionability does not satisfy the pleading requirements of *Twombly*."  Dkt. 18 at 18.  In short, Plaintiff's unconscionability allegations are merely conclusory statements that utterly fail to meet the Rule 12(b)(6) pleading standard enunciated by the Supreme Court.  *See Iqbal*, 556 U.S. at 677–78;

*Twombly*, 550 U.S. at 570.  As the Fifth Circuit has recognized, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal under Rule 12(b)(6)."  *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002) (citation omitted).  Accordingly, Plaintiff's DTPA unconscionability claim should be dismissed.

## D.    Negligence

Lastly, Plaintiff advances a negligence claim, alleging that Stuart Dean owed Plaintiff a duty to exercise reasonable care and violated this duty by failing to properly fix the corroding window frames and drainage system at Diamond Beach.  Under Texas law, the elements of a negligence claim are: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately caused by the breach.  *See Nabors Drilling, USA, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).  Stuart Dean argues that Plaintiff has failed to state an actionable claim for negligence because the First Amended Complaint negates the elements of duty and causation.

According to the First Amended Complaint, Florida Glass originally installed the windows at Diamond Beach in 2009, but messed up by installing the windows backwards, "draining condensate and precipitation into the interior of Diamond Beach, instead of to the exterior."  Dkt. 16 at 3.  Once the problem was discovered a few years later, Kawneer hired Stuart Dean "to remediate approximately 119 window frames at Diamond Beach that showed signs of coating failure and corrosion."  *Id.*

To succeed on a negligence claim, a plaintiff must prove that defendant owed it a legal duty.  If there is no existence of a legal duty, then there can be no legal liability for negligence.  *See Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 459 (Tex. App.—Dallas 2007,

pet. denied). Stuart Dean contends that the only damages Plaintiff seeks were caused by the backward installation of the windows by Florida Glass. Since there is no allegation that Stuart Dean was supposed inspect the windows or discover that the windows were installed backward, Stuart Dean argues it owed Plaintiff no legal duty. Stuart Dean also contends that the face of the First Amended Complaint expressly disproves the causation element. This is because the damages Plaintiff alleges it suffered as a result of Stuart Dean's negligence—"excessive corrosion and insufficient drainage to the window frame systems of Diamond Beach"—are the same damages that were caused by Florida Glass's alleged negligent installation of the windows back in 2009, prior to Stuart Dean's arrival on the scene. Dkt. 16 at 9. It is legally impossible, Stuart Dean contends, for it to have caused damages when Plaintiff readily admits those same damages resulted from Florida Glass's alleged conduct several years before. Stuart Dean's negligence arguments make a lot of sense and Plaintiff apparently agrees because it failed to respond to any of Stuart Dean's arguments related to the negligence cause of action. Finding that Plaintiff has failed to sufficiently plead the duty and causation elements of a negligence claim, the Court recommends the negligence cause of action be dismissed.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Stuart Dean's Motion to Dismiss be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to

file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 21st day of December, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE